IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01800-LTB-CBS

CLINTON TEAGUE,
      Plaintiff,
v.

R. HOOD, Warden,
R. WILEY, Warden,
T. SUDLOW, Case Manager,
J. ARROYO, Counselor,
J. JOHNSON, Correctional Officer,
P. LEE, Correctional Officer,
P. SCHAFFER, Correctional Officer, Now "Lieutenant,"
J. GUADIAN, Correctional Officer,
C. JARBOE, Correctional Officer,
L. SMITH, Special Investigative Agent (S.I.A.),
W. LOA, Lieutenant,
M. DUNLAP, Disciplinary Hearing Officer,
R. BAUER, Health Service Administrator,
L. LEYBA, Clinical Director,
D. SCHIEFELBEIN, Physician Assistant,
N. GLADBACH, Nurse Practitioner,
J. WALTERS, Lieutenant,
P. TELITZ, Correctional Officer,
C. HOTCHKISS, Correctional Officer,
R. STEVENS, Correctional Officer,
D. CARPENTER, Lieutenant,
D. KRIST, Special Investigative Agent (S.I.A.),
J. VIGIL, Correctional Officer,
      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

      This civil action comes before the court on numerous motions.  Pursuant to the

Order of Reference dated February 23, 2007 (doc. # 29) and the memoranda dated

September 5, 2007 (doc. # 72), September 7, 2007 (doc. # 77), September 24, 2007 (doc.

# 84), December 4, 2007 (doc. # 89), December 19, 2007 (doc. # 94), and January 7, 2008

(doc. # 99), these matters were referred to the Magistrate Judge.  The court has reviewed

the pleadings, the motions, the responses filed September 19, 2007 (doc. # 82) and

January 28, 2008 (doc. # 103), the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

Mr. Teague is currently an inmate at the United States Penitentiary in Florence, Colorado ("USP Florence"). (*See, e.g.* doc. # 105). Mr. Teague is serving a 144-month term of incarceration for Armed Robbery of a Credit Union and a consecutive 60-month term for use of a Firearm During an Armed Robbery of a Credit Union in violation of 18 U.S.C. § 2113(a) and (d) and § 924(c)(1) and (2). (*See* doc. # 73-2 at p. 4 of 5). Mr. Teague has a current release date of September 13, 2008 via good conduct time release. (*See id.*).

Mr. Teague's claims arise from events and circumstances at USP-Florence between 2003 and 2006. (*See* Second Amended Complaint ("SAC") (doc. # 26)). Proceeding *pro se*, Mr. Teague has alleged in 11 claims that 23 Defendants violated his First, Fourth, Fifth, Sixth, and Eighth Amendment rights pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Mr. Teague seeks "compensatory" and "exemplary" damages. (*See* SAC (doc. # 26) at p. 30 of 30).

In Claim One, Mr. Teague alleges that he was assaulted and injured on May 23, 2003 by Defendant P. Lee in retaliation for filing a previous lawsuit, Civil Action No. 02-cv-0279-PSF-BNB, against another staff member, J. Johnson. (*See* SAC (doc. # 26) at pp. 6-7 of 30). Mr. Teague alleges that he informed Defendants P. Schaffer, J. Walters, L. Smith, and R. Hood of the assault and requested medical treatment and an investigation, which were denied. (*See id.*).

In Claim Two, Mr. Teague alleges that he was "electrocuted on November 6, 2003 and denied medical treatment," after Defendant C. Jarboe directed him to hold a "cord/cable." (*See* SAC (doc. # 26) at p. 8 of 30). Mr. Teague alleges that Defendant C.

Jarboe denied him access to medical treatment for three days and that Defendant R. Hood refused to investigate the electrocution and the denial of medical treatment. (*See id.*).

In Claim Three, Mr. Teague alleges that on September 3, 2004, he was assaulted by Defendants P. Schaffer, C. Hotchkiss, P. Telitz, and R. Stevens in retaliation for filing a prior lawsuit against another staff member. (*See* SAC (doc. # 26) at p. 9 of 30). Mr. Teague alleges that a false incident report was filed to cover up the assault. (*See id.*). Mr. Teague alleges that Defendants R. Hood, L. Smith, T. Sudlow, and J. Arroyo ignored his prior complaints of retaliation, thus failing to protect him. (*See id.*).

In Claim Four, Mr. Teague alleges that when he needed to use the telephone, Defendants D. Carpenter, J. Arroyo, and T. Sudlow escorted him to a holding cell contaminated with feces. (*See* SAC (doc. # 26) at p.11 of 30). Mr. Teague alleges that this treatment was in retaliation for filing a prior lawsuit against another staff member, to discourage him from making legal calls, and cruel and unusual punishment. (*See id.*).

In Claim Five, Mr. Teague alleges that Defendant P. Lee assaulted him on July 11, 2005 in retaliation for naming him as a defendant in a previous lawsuit and that Defendant J. Guadian "wrote a false incident report to cover-up the assault." (*See* SAC (doc. # 26) at p.13 of 30). Mr. Teague alleges that Defendant P. Lee conspired with Defendant J. Guadian to file a false incident report to cover up the assault. (*See id.*). Mr. Teague further alleges that the assault occurred due to the negligence and deliberate indifference of Defendants R. Wiley, D. Krist, T. Sudlow, and J. Arroyo. (*See id.*).

In Claim Six, Mr. Teague alleges that he was denied a meal tray and an 800-milligram ibuprofen tablet by Defendant R. Stevens on August 20, 2005 in retaliation for naming a prison staff member in a prior civil lawsuit. (*See* SAC (doc. # 26) at pp. 14-15 of 30). Mr. Teague further alleges that Defendant D. Carpenter did not properly supervise Defendant R. Stevens in this situation. (*See id.*).

In Claim Seven, Mr. Teague alleges that Defendant S. Smith wrote a false incident

report regarding his use of the telephone. (*See* SAC (doc. # 26) at p. 16 of 30). Mr. Teague further alleges that Defendant J. Arroyo "changed" the report. (*See id.*). Mr. Teague alleges that the false report was filed in retaliation, but has not alleged any motive for retaliation. (*See id.*).

In Claim Eight, Mr. Teague alleges that he was disciplined for his refusal to move to D-Unit on November 30, 2005 and that he was left in Z-Unit where he suffered retaliation. (*See* SAC (doc. # 26) at pp. 17-18 of 30). Mr. Teague alleges that Defendant J. Walters ordered and Defendant J. Vigil wrote a false report and that he was disciplined by Defendants T. Sudlow, J. Arroyo, and M. Dunlap in retaliation. (*See id.*). Mr. Teague alleges that Defendants R. Wiley, M. Dunlap, D. Krist, J. Walters, T. Sudlow, J. Arroyo, and J. Vigil conspired to retaliate against him. (*See id.*).

In Claim Nine, Mr. Teague alleges that he was denied access to the court on April 13, 2006 when Defendant T. Sudlow did not allow him to attend a court hearing via telephone. (*See* SAC (doc. # 26) at p. 19 of 30). Mr. Teague alleges that Defendants "R. Wiley and D. Krist were informed of the matter." (*See id.*).

In Claim Ten, Mr. Teague alleges that Defendants L. Leyba, D. Schiefelbein, and N. Gladbach conspired to cover up injuries he received on July 11, 2005 and other wrongdoing by denying requests he made for medical treatment on July 23, 2004, July 18, 2005, July 23, 2005, and October 17, 2005. (*See* SAC (doc. # 26) at pp. 20-21 of 30). Mr. Teague alleges that Defendant R. Bauer failed to properly supervise Defendants L. Leyba, D. Schiefelbein, and N. Gladbach. (*See id.*).

In Claim Eleven, Mr. Teague alleges that he was subjected to harassment by Defendant J. Johnson on six occasions (October 3, 2005, November 25, 2005, January 19, 2006, January 20, 2006, January 24, 2006, and January 25, 2006 in retaliation for filing a lawsuit against Defendant J. Johnson on June 22, 2005. (*See* SAC (doc. # 26) at pp. 22-23 of 30). Mr. Teague alleges that Defendants R. Wiley and D. Krist failed to properly

supervise Defendant J. Johnson to prevent the harassment.  (*See id.*).

II.      Defendants' Amended Motion to Dismiss

A.      Standard of Review

Defendants move to dismiss all eleven claims in the SAC pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the court does not have subject matter jurisdiction over the matter.  In addressing a jurisdictional challenge, the court need not presume all of the allegations contained in the complaint to be true, "but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. . . ." *United States v. Rodriguez Aguirre*, 264 F.3d 1195, 1204 (10th Cir. 2001) (citation omitted).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).  The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.  *Twombly*, 127 S.Ct. at 1965.  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

The court must construe Mr. Teague's SAC liberally because he is representing himself.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers");  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[a] pro se litigant's pleadings are to be construed liberally") (citations omitted).  However, the court cannot be a *pro se* litigant's advocate.  *Hall*, 935 F. 2d at 1110.  A court may not assume that a plaintiff can prove facts

that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

B.     Analysis

1.     Sovereign Immunity from *Bivens* Claims

Defendants argue that to the extent Mr. Teague brings his claims under *Bivens*, 403 U.S. at 388, against Defendants in their official capacities, such claims must be dismissed. (*See* SAC (doc. # 26) at pp. 3-5 of 30 (indicating that Mr. Teague is suing all Defendants in their individual and official capacities)). Mr. Teague responds that "*Bivens* does waive sovereign immunity claims against federal employee's [sic] in their individual capacity." (*See* Mr. Teague's "Motion Opposing Defendants['] Motion to Dismiss" ("Response") (doc. # 82) at p. 3 of 5 (emphasis in original)).

In *Bivens*, 403 U.S. at 388, the Supreme Court recognized "an implied private right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 66 (2001). "If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity." *Malesko*, 534 U.S. at 72. "The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP." *Malesko*, 534 U.S. at 72. *See also Simmat v. U.S. Bureau of Prisons* 413 F.3d 1225, 1231 (10th Cir. 2005) ("a *Bivens* claim lies against the federal official in his individual capacity – not . . . against

officials in their official capacity"); *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996) (claim for damages against a federal defendant in his official capacity is treated as a claim against the United States). To the extent that Mr. Teague has alleged claims pursuant to *Bivens* against Defendants in their official capacities, such claims are barred by sovereign immunity and are thus properly dismissed with prejudice for lack of subject matter jurisdiction.

2.      Statute of Limitations Bars Claims One, Three and part of Claim Ten

Defendants argue that Mr. Teague's Claims One, Three, and Ten are barred by the applicable statute of limitations. "A *Bivens* action is subject to the limitation period for an action under 42 U.S.C. § 1983, and that limitation period is set by the personal injury statute in the state where the cause of action accrues." *Roberts v. Barreras*, 484 F.3d 1236, 1238 (10th Cir. 2007) (citations omitted). In Colorado, the limitation on personal injury claims is two years. *See* Colo. Rev. Stat. § 13-80-102(g) (establishing a two-year limitation period for "all actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "all other actions of every kind for which no other period of limitation is provided"); *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir.1993) (applying § 13-80-102 to § 1983 claim).

"Although state law establishes the statute of limitations, federal law determines when plaintiffs' federal *Bivens* claims accrued." *Van Tu v. Koster*, 364 F.3d 1196, 1199 (10th Cir. 2004) (citing *Industrial Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)). "Under federal law, the statute of limitations on a *Bivens* claim begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Van Tu*, 364 F.3d at 1199 (internal quotation marks and citation omitted). *See also Kripp v. Luton*, 466 F.3d 1171, 1175 (10th Cir. 2006) ("[F]or *Bivens* actions (the federal analogue to § 1983 claims), we have held that

a claimant's cause of action accrues when the claimant knew or had reason to know 'of the existence and cause of injury which is the basis for his action.'") (citation omitted).

Mr. Teague's Claim One arises from events that he alleges occurred on May 23, 2003. (*See* SAC (doc. # 26) at p. 7 of 30). Mr. Teague's Claim Three arises from events that he alleges occurred on September 3, 2004. (*See* SAC (doc. # 26) at pp. 9-10 of 30). Part of Mr. Teague's Claim Ten arises from events that he alleges occurred on July 23, 2004 and September 3, 2004. (*See* SAC (doc. # 26) at pp. 20-21 of 30). Mr. Teague filed this *Bivens* action on or about September 5, 2006 (*see* "Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915" (doc. # 1)), more than two years after he knew or had reason to know of the events which are the basis of his Claims One, Three, and part of Claim Ten. *See Calvert v. Roadway Exp., Inc.*, 32 Fed. Appx. 510 (10th Cir. Feb. 19, 2002) (filing date was date when plaintiff "presented his complaint and motion to proceed in forma pauperis (IFP) to the district court and clerk stamped them as received").

As an affirmative defense, the statute of limitations may be subject to certain defenses such as waiver, estoppel, or equitable tolling. *See Rotella v. Wood*, 528 U.S. 549, 560 (2000) (federal statutes of limitations "are generally subject to equitable principles of tolling"). However equitable tolling is employed as an "exception, not the rule." *Rotella*, 528 U.S. at 561. Based on the pleadings, Mr. Teague's Claims One, Three, and Ten appear to be barred by the statute of limitations, unless Mr. Teague shows a basis for tolling the limitations period. Mr. Teague responds: "[w]ith the appropriate legal representation. The plaintiff's attorney will prove 'statute of limitations has <u>not</u> run on claims I, III & X! [sic]'" (*See* doc. # 82 at p. 3 of 5 (emphais in original)).[1] Mr. Teague has not adequately alleged a basis for tolling the limitations period to avoid the statute of

---

[1]     On December 11, 2006, the court denied Mr. Teague's Motion for the Appointment of Counsel as premature. (*See* docs. # 17, # 15, # 14, and # 13). On March 15, 2007, the court denied Mr. Teague's second Motion for the Appointment of Counsel. (*See* docs. # 33, # 34, # 35, and # 37).

limitations bar. As the statute of limitations defense is patently clear from the allegations in the SAC, Claims One, Three, and part of Claim Ten are properly dismissed with prejudice as barred by the statute of limitations.[2]

3.    Defendants Bauer and Gladbach

Defendants R. Bauer and N. Gladbach move to be dismissed from this action based on their absolute immunity as United States Public Health Service employees. Title 42 U.S.C. § 233(a) "makes the United States the exclusive Defendant for injuries that employees of the Public Health Service cause while acting within the scope of their employment." *Lurch v. United States*, 719 F.2d 333, 340 n. 10 (10th Cir. 1983). *See also Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000) ("Section 233(a) makes the Federal Tort Claims Act the exclusive remedy for specified actions against members of the Public Health Service."); *Allen v. Christenberry*, 327 F.3d 1290, 1294 (11th Cir. 2003) (Section 233(a) "makes the remedy provided against the United States under the FTCA the exclusive remedy for the medical malpractice of employees or contractors of the PHS."). Mr. Teague responds that "Defendants Bauer and Gladbach do not have "Absolute Immunity Against Suit and should not be dismissed from this civil action." (*See* doc. # 82 at p. 3 of 5). Mr. Teague does not contest that Defendants R. Bauer and N. Gladbach are United States Public Health Service employees or that they were acting within the scope of their employment. (*See* docs. # 73-3 and # 73-4). Defendants R. Bauer and N. Gladbach are properly dismissed from this civil action with prejudice because the FTCA is

---

[2]    The court notes that based upon the pleadings, Claim Two is also barred by the statute of limitations. Mr. Teague named only Defendants Hood and Jarboe in Claim Two. Defendant Jarboe waived service on April 8, 2008. (*See* doc. # 110). Upon information and belief, Defendant Hood has waived service. (*See* doc. # 113 at ¶ 3). Mr. Teague's Claim Two arises from events that he alleges occurred on November 6, 2003. (*See* SAC (doc. # 26) at p. 8 of 30). As the statute of limitations defense is patently clear from the facts alleged to support the claim, Claim Two is properly dismissed with prejudice as barred by the statute of limitations.

the exclusive remedy for Mr. Teague's claims against them.

4.      Personal Participation in Alleged Violations

Personal participation is an essential allegation in a *Bivens* action. A defendant may not be held liable merely because of his or her supervisory position. *See Kite v. Kelley*, 546 F.2d 334, 336-38 (10th Cir. 1976) (plaintiff suing federal officials for constitutional violations under *Bivens* must show affirmative link between defendant's conduct and the alleged constitutional deprivation). A plaintiff must both allege in the complaint and prove at trial an affirmative link between the alleged constitutional violation and a defendant's participation. *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial").

Defendants R. Wiley, D. Krist, D. Carpenter, R. Bauer, J. Arroyo, and T. Sudlow argue that Mr. Teague has failed to plead sufficient facts to demonstrate that they had any personal participation in or any supervisory liability for certain of the alleged violations of his constitutional rights. Mr. Teague responds that "[w]ith the appropriate legal representation. The plaintiff's attorney will prove 'defendants personal participation and superior liability!'" (*See* doc. # 82 at p. 3 of 5). Mr. Teague's argument that Defendants have "superior liability" is contrary to the law. *See Kite v. Kelley*, 546 F.2d at 336-38 ("federal officer may not be held monetarily liable for acts of his subordinates resulting in the deprivation of constitutional rights").

In Claim Five, Mr. Teague alleges that Defendants R. Wiley and D. Krist are liable for an assault on Mr. Teague by Defendant P. Lee on July 11, 2005. (*See* SAC (doc. # 26) at p.13 of 30). In Claim Eight, Mr. Teague alleges that Defendants R. Wiley and D. Krist are liable for discipline by Defendants T. Sudlow, J. Arroyo, and M. Dunlap based on Mr. Teague's refusal to move to D-Unit on November 30, 2005. (*See* SAC (doc. # 26) at p. 17

of 30).  However, Mr. Teague has not alleged that Defendants R. Wiley or D. Krist were present and/or participated in the assault.  There are no allegations that these Defendants had any direct contact with Mr. Teague, that they were present at the time of the conduct alleged, or that they actually knew of and acquiesced in the alleged violations.  Other than conclusorily alleging that Defendants R. Wiley and D. Krist were "aware of Teague being retaliated against," Mr. Teague has not alleged that Defendants R. Wiley or D. Krist participated in the alleged unlawful discipline.  Mr. Teague alleges that Defendants R. Wiley or D. Krist became aware of constitutional violations against him through his administrative filings.  Defendants R. Wiley or D. Krist cannot be held liable for actions that occurred prior to their knowledge of such alleged actions.  In sum, Mr. Teague does not allege in Claims Five or Eight any specific actions by Defendants R. Wiley or D. Krist that give rise to a constitutional violation.

In Claim Six, Mr. Teague alleges that Defendant D. Carpenter did not properly supervise Defendant R. Stevens when he denied Mr. Teague a meal tray and an 800-milligram ibuprofen tablet on August 20, 2005.  (*See* SAC (doc. # 26) at pp. 14-15 of 30).  In Claim Seven, Mr. Teague alleges merely that Defendant S. Smith was "under the supervision for. Wiley and D. Krist."  (*See* SAC (doc. # 26) at p. 16 of 30).  In Claim Nine, Mr. Teague alleges that he was denied access to the court on April 13, 2006 when Defendant T. Sudlow did not allow him to attend a court hearing via telephone.  (*See* SAC (doc. # 26) at p. 19 of 30).  In Claim Ten, Mr. Teague alleges that Defendant R. Bauer failed to properly supervise Defendants L. Leyba, D. Schiefelbein, and N. Gladbach.  (*See* SAC (doc. # 26) at p. 20 of 30).  In Claim Eleven, Mr. Teague alleges that Defendants R. Wiley and D. Krist failed to properly supervise Defendant J. Johnson to prevent six alleged occasions of harassment.  (*See* SAC (doc. # 26) at pp. 22-23 of 30).  Mr. Teague alleges that Defendants R. Wiley and D. Krist are liable because they "were informed of the matter." (*See id.*).  These claims based purely on Defendants' supervisory positions do not

state a claim upon which relief can be granted.  *See Kite v. Kelley*, 546 F.2d at 336-38 (a defendant may not be held liable merely because of his or her supervisory position).

Mr. Teague's allegations against Defendants Arroyo and Sudlow in Claim Five are vague and conclusory.  Mr. Teague fails to allege any specific dates, times, or conduct by Defendants Arroyo and Sudlow in Claim Five sufficient to state a claim upon which relief can be granted for retaliation.

Mr. Teague has not alleged an affirmative link between certain of the alleged constitutional violations and the personal participation of Defendants R. Wiley, D. Krist, D. Carpenter, R. Bauer, J. Arroyo, and T. Sudlow.  Thus, Defendants R. Wiley and D. Krist are properly dismissed from Claims Five, Eight, Nine, and Eleven, Defendant D. Carpenter is properly dismissed from Claim Six, Defendant R. Bauer is properly dismissed from Claim Ten, and Defendants J. Arroyo and T. Sudlow are properly dismissed from Claims Five and Eight for lack of personal participation.


5.      Failure to State Claim for Retaliation in Claims Four, Six, Seven, and Eight

Mr. Teague alleges in Claim Four that "[i]n retaliation for filing a prior civil action against U.S. Penitentiary-Max officials" Defendants D. Carpenter, T. Sudlow, and J. Arroyo "[s]everal times prior to and after February 8, 2005," placed him "in a cell contaminated with human feces each time he received a legal call . . . ."  (*See* SAC (doc. # 26) at p. 11 of 30). Mr. Teague alleges in Claim Six that he was denied a meal tray and an 800-milligram ibuprofen tablet by Defendant R. Stevens on August 20, 2005 "[i]n retaliation for naming a prison staff member in a prior civil lawsuit."  (*See* SAC (doc. # 26) at pp. 14-15 of 30). Mr. Teague alleges in Claim Seven that he was "retaliated against" on September 5, 2005 when Defendant S. Smith wrote a false incident report regarding his use of the telephone and Defendant J. Arroyo "changed" the report.  (*See* SAC (doc. # 26) at p. 16 of 30).  In Claim Eight, Mr. Teague alleges that he was disciplined for his refusal to move to D-Unit

on November 30, 2005 and that he was left in Z-Unit where he suffered retaliation. (*See* SAC (doc. # 26) at pp. 17-18 of 30).

"[G]overnment action which chills constitutionally protected speech or expression contravenes the First Amendment." *Wolford v. Lasater*, 78 F.3d 484, 488 (10th Cir. 1996). *See also Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir.1990) ("The right of access to the courts . . . is also one aspect of the First Amendment right to petition the government for redress of grievances"); *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir.1989) (holding that retaliation for filing lawsuits and administrative grievances "violates both the inmate's right of access to the courts and the inmate's First Amendment rights"). Prison "officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotation marks and citation omitted).

Nevertheless, "an inmate is not inoculated from the normal conditions of confinement . . . merely because he has engaged in protected activity." *Peterson*, 149 F.3d at 1144. "[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Peterson*, 149 F.3d at 1144 (internal quotation marks and citation omitted). *See also Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) ("ultimate question is whether events would have transpired differently absent the retaliatory motive") (citation omitted).

"To state a valid claim for retaliation . . . , a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citation omitted). "Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d

560, 562 n. 1 (10th Cir. 1990). *See also Jones*, 188 F.3d at 325 ("Mere conclusionary [sic] allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim") (citation omitted). "The inmate must allege more than his personal belief that he is the victim of retaliation." *Jones*, 188 F.3d at 325. The prisoner must "allege a chronology of events from which retaliation may plausibly be inferred." *Jones*, 188 F.3d at 325 (citation omitted).

Mr. Teague responds that "[w]ith the appropriate legal representation. The plaintiff's attorney will show the courts 'evidence of retaliation by the defendants and the history of BOP staff doing such in the past.' " (*See* doc. # 82 at p. 3 of 5). Mr. Teague's allegations do not set forth adequate facts to state a cognizable *Bivens* claim for unconstitutional retaliation.

In Claims Four and Six, Mr. Teague has not specifically alleged that the Defendants were aware of Civil Action No. 02-cv-0279-PSF-BNB against J. Johnson or any other lawsuit. In a First Amendment retaliation claim, an inference of retaliatory motive may be undermined by a long delay between the protected activity and the challenged conduct. *Deschenie v. Board of Education of Central Consolidated School District No. 22*, 473 F.3d 1271, 1278 (10th Cir. 2007) (internal quotation marks and citation omitted). *See also Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668 (7th Cir. 2006) ("proof of retaliation . . . presupposes that the decision-maker knew that the plaintiff engaged in a statutorily protected activity); *Brown v. Crowley*, 312 F.3d 782, 790 (6th Cir. 2002) ("The third element of a retaliation claim is a causal connection between the protected conduct and the adverse action. This element is satisfied where the adverse action was motivated at least in part by the plaintiff's protected conduct.") (internal quotation marks and citation omitted). Civil Action No. 02-cv-0279-PSF-BNB was filed in 2002, three years before the conduct alleged in Claims Four and Six. Mr. Teague has not alleged a chronology of events pointing to these Defendants' intent to retaliate against him for his prior civil

lawsuits. Mr. Teague has not sufficiently alleged that Defendants were aware of protected activity or that their actions were related to protected activity.

In Claims Seven and Eight, Mr. Teague has not alleged any motive for retaliation or that Defendants had knowledge of any protected activity. Mr. Teague has not alleged any temporal relationship between any protected activity and Defendants' actions. Claims Seven and Eight are based on nothing more than conclusory allegations. Mr. Teague has not set forth any "chronology of events from which retaliation may plausibly be inferred." *Jones*, 188 F.3d at 325 (citation omitted).

As Mr. Teague has failed to adequately allege that his protected activity was the "but for" cause of Defendants' actions, he fails to state a claim against Defendants for retaliation based on the exercise of a constitutional right. *See Peterson*, 149 F.3d at 1144 ("allegations of retaliation must fail because he has presented no evidence that the defendants' alleged retaliatory motives were the 'but for' cause of the defendants' actions"). *See also Baker v. Smith*, 771 F. Supp. 1156, 1158 (D. Kan. 1991) ("A complaint that contains only conclusory allegations of a deprivation of a constitutional right and thus fails to supply a sufficient factual basis to allow defendants to intelligently prepare a defense fails to state a cause of action and must be dismissed") (citations omitted). Claims Four, Six, Seven, and Eight are properly dismissed for failure to state a claim upon which relief can be granted.

6.    Failure to State Claim for Conspiracy

Mr. Teague further alleges under *Bivens*, 403 U.S. at 388, that Defendants conspired to violate his constitutional rights. (*See* SAC (doc. # 26) at pp. 9 ¶ 19, p. 13 ¶ 50, p. 14 ¶ 53, p. 17 ¶¶ 81-83, p. 19 ¶ 93, p. 20 ¶¶ 95, 97-99, 104). Defendants argue that Mr. Teague has failed to state a claim for conspiracy. Mr. Teague responds that "[w]ith the appropriate legal representation. The plaintiff's attorney will prove that there is 'evidence

of conspiracy!' " (*See* doc. # 82 at p. 3 of 5).

Civil conspiracy is defined as "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another; and an overt act that results in damage." *Baker v. Smith*, 771 F. Supp. at 1158 ((internal quotation marks and citation omitted). "[C]onclusory allegations that defendants acted in concert, or conspired without specific factual allegations to support such assertions are insufficient." *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001) (internal quotation marks and citation omitted).

Mr. Teague has failed to allege facts sufficient to suggest the existence of any of the elements of a conspiracy. He has not alleged with specificity the parties involved, the purpose, the date, such that Defendant are put on notice of the claims against them. As Mr. Teague has made nothing more than conclusory, vague, or general allegations of a conspiracy, his claims of conspiracy are properly dismissed for failure to state a claim upon which relief can be granted. *See Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1221 (S.D. Cal. 1997) (citations omitted).

7.    Claim Five

In Claim Five, Mr. Teague alleges that Defendant P. Lee assaulted him on July 11, 2005 in retaliation for naming him as a defendant in a previous lawsuit. (*See* SAC (doc. # 26) at p.13 of 30). Mr. Teague alleges that "while Teague's hands were secured behind his back, being escorted by J. Guadian," Defendant P. Lee "struck Teague's right side of the leg with a nightstick/baton." (*See id.*). Mr. Teague alleges that Defendant Guadian "wrote a false incident report to cover-up the assault." (*See id.*).

The use of excessive force by a prison official on a prisoner can rise to the level of an Eighth Amendment violation. *See Northington v. Jackson*, 973 F.2d 1518, 1523 (10th

Cir 1992) ("excessive force claims brought by convicted prisoners fall under the rubric of the Eighth Amendment's prohibition against cruel and unusual punishment . . . "). The pivotal inquiry in an excessive use of force claim is whether force was applied in a good-faith effort to maintain and restore discipline, or maliciously and sadistically to cause harm. *Despain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). Mr. Teague has not alleged any injury associated with this claim. However, the nature of Mr. Teague's injuries is only one factor in the determination of whether the use of excessive force constituted an Eighth Amendment violation. *See Northington*, 973 F.2d at 1523 ("significant physical injury not required because constitutional inquiry focuses on whether infliction of pain was unnecessary and wanton). Mr. Teague has alleged that there was no need for the application of force. The court concludes that at this stage of the litigation, Mr. Teague has stated a claim for excessive force under the Eighth Amendment against Defendants P. Lee and J. Guadian.

8.     Failure to State Claim for Denial of Access to Courts in Claim Nine

Mr. Teague alleges that Defendant T. Sudlow denied him access to the courts on April 13, 2006 when she did not allow him to attend a court hearing via telephone. (*See* SAC (doc. # 26) at p. 19 of 30). Defendant T. Sudlow argues that Mr. Teague's allegations do not state a claim for denial of access to the courts. Mr. Teague responds that "[w]ith the appropriate legal representation. The plaintiff's attorney will prove 'plaintiff's access to the court was infringed by defendants. . . .' " (*See* doc. # 82 at p. 4 of 5).

Due to a scheduling error, Mr. Teague did not participate via telephone in a court hearing held on April 13, 2006 in Case No. AGCR034608 the Iowa District Court in and for Black Hawk County. (*See* doc. # 22-5 at pp. 69-75 of 114). When contacted regarding the scheduling error, the court indicated that Mr. Teague's participation in the hearing was not necessary and would not influence the court's determination of the matter. (*See id.*). In

the hearing the court addressed Mr. Teague's request for withdrawal of a detainer filed by the State of Iowa or for credit for time served on a federal conviction. The court noted that it had twice previously denied the same request by Mr. Teague.

A prisoner's constitutional right of access to the courts is accorded by article 4 of the Constitution and the Fourteenth Amendment, as well as by the First Amendment right to petition. *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985). A prisoner must show that any denial or delay of access to the court prejudiced him in pursuing nonfrivolous litigation. *Peterson v. Shanks*, 149 F.3d at 1145. *See also Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir. 2006) (to state a claim for denial of access to the courts, a plaintiff "must show that any denial or delay of access to the court prejudiced him in pursuing litigation") (citation omitted).

Mr. Teague's allegations do not state a claim for denial of access to the courts. Mr. Teague's own allegations indicate the court denied Mr. Teague's request based on legal reasons and not on Mr. Teague's failure to participate in the hearing via telephone. (*See* doc. # 22-5 at pp. 69-75 of 114). As Mr. Teague's own allegations do not indicate that he was prejudiced in pursuing any nonfrivolous litigation and prejudice is an essential element of a claim for denial of access to the courts, Claim Nine is properly dismissed for failure to state a claim upon which relief can be granted.


9.     Failure to State Claim for Violation of Fourth Amendment

Mr. Teague generally alleges violation of his Fourth Amendment rights in all of his claims. (*See, e.g.*, doc. # 26 at ¶¶ 7, 16, 30, 43, 51, 65, 74, 84, 93, 104, 116). The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. CONST. Amend. IV. In analyzing any Fourth Amendment issue, the threshold question is whether there has been either a "search" or a "seizure." Mr. Teague's claims do not allege any

search or seizure. Further, the Supreme Court has concluded "that prisoners have no legitimate expectation of privacy and that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells . . . ." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). Mr. Teague's claims are not cognizable under the Fourth Amendment and are properly dismissed with prejudice.

10.    Failure to State Claim for Violation of Sixth Amendment

Mr. Teague generally alleges violation of his Sixth Amendment rights in all of his claims. (*See, e.g.*, doc. # 26 at ¶¶ 7, 16, 30, 43, 51, 65, 74, 84, 93, 104, 116). The Sixth Amendment provides certain rights "[i]n all criminal prosecutions." U.S. CONST. Amend. VI. Mr. Teague has not set forth any factual allegations suggesting that Defendants' conduct did not meet the Sixth Amendment's requirements. Mr. Teague does not allege any facts pertaining to a criminal prosecution. Mr. Teague's response does not address Defendant's argument. (*See* doc. # 82). To the extent that Mr. Teague may be alleging a Sixth Amendment violation regarding incident reports and prison discipline, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). *See also Baxter v. Palmigiano*, 425 U.S. 308, 321-23 (1976) (law is clearly established that prisoners possess no Sixth Amendment rights at a prison disciplinary hearing); *Sash v. Zenk*, 439 F.3d 61,63-64 (2d Cir.) (prison disciplinary proceedings are not treated as "criminal" for purposes of the Sixth Amendment) (citations omitted), *cert. denied*, 127 S.Ct. 277 (2006). Mr. Teague's claims are not cognizable under the Sixth Amendment and are properly dismissed with prejudice.

11.    Claim Eleven Fails to State Claim

In Claim Eleven, Mr. Teague alleges that he was subjected to harassment by

Defendant J. Johnson on six occasions (October 3, 2005, November 25, 2005, January 19, 2006, January 20, 2006, January 24, 2006, and January 25, 2006) in retaliation for filing a lawsuit against Defendant J. Johnson on June 22, 2005. (*See* SAC (doc. # 26) at pp. 22-23 of 30). Mr. Teague alleges that Defendant J. Johnson verbally harassed him by making hostile statements such as "you will die before I retire," threw Mr. Teague's "clean laundry on the dirty floor," and did "not turn[ ] in a commissary form," causing Mr. Teague to experience a delay in receiving his "commissary item." (*See id.*).

Mr. Teague's allegations do not state a claim for retaliation against Defendant J. Johnson. First, verbal harassment, threats, or taunts do not rise to the level of retaliation or an Eighth Amendment violation. *See McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001) ("acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment") (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) ("Verbal harassment or abuse of the sort alleged in this case [sheriff threatened to hang prisoner] is not sufficient to state a constitutional deprivation under 42 U.S..C. § 1983.")); *Adkins v. Rodriguez*, 59 F.3d 1034, 1037-38 (10th Cir. 1995) (harsh, even threatening language does not amount to a constitutional violation); *Abeyta v. Chama Valley Independent School Dist. No. 19*, 77 F.3d 1253, 1256 (10th Cir. 1996) ("even extreme verbal abuse is insufficient to establish a constitutional violation"); *Northington v. Jackson*, 973 F.2d at 1524 (verbal threats and harassment "are necessarily excluded from the cruel and unusual punishment inquiry"). Further, Mr. Teague's allegation of a single incident of laundry being thrown on the floor and one brief delay in receipt of a commissary item are simply not sufficient to state a claim for violation of his constitutional rights. *See, e.g., Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("extreme deprivations are required to make out a conditions-of-confinement claim"). Claim Eleven is properly dismissed for failure to state a claim upon which relief can be granted.

12.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity from Mr. Teague's claims.  The Supreme Court has recognized a qualified immunity defense for *Bivens* claims against federal officials.  *Johnson v. Fankell*, 520 U.S. 911, 914 (1997).  *See also Malesko*, 534 U.S. at 72 ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity.").   "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (internal quotation marks and citation omitted).  "A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation."  *Id.*  *See also Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001) ("Once a defendant raises the defense of qualified immunity in the context of a motion to dismiss, a court must first determine whether the plaintiff has asserted a violation of federal law.") (citation omitted).

As the court recommends herein that all but Claim Five be dismissed, the court need proceed no further on the qualified immunity issue.  *See Christiansen v. City of Tulsa*, 332 F.3d 1270, 1278 (10th Cir. 2003) (court "need not reach the question of whether the individual defendants are entitled to qualified immunity if [it] determine[s]. . . , that plaintiffs failed to sufficiently allege the violation of a constitutional right").  Other than Defendants P. Lee and J. Guadian as to Claim Five, all other Defendants are entitled to qualified immunity from Mr. Teague's claims.

III.    Mr. Teague's Motions for Injunctive Relief

Mr. Teague has filed four motions seeking injunctive relief:

1)    "Plaintiff's Motion Informing the Courts of the Continued Retaliations/Harassments Plaintiff is Forced to Endure by U.S. Penitentiary - Max Officials in D-Unit and Requesting an Injunction/Restraining Order against the Defendants/Defendants Co Workers" (doc. # 83);

2)    "Plaintiff's Motion Requesting an Injunction and Restraining Order" (doc. # 88);

3)    "Plaintiff's Motion Requesting an Injunction and a Restraining Order against 'Unit Manager Collins, Case Manager Finley & Counselor Madison' and an Extension of Time to Provide Inmate Account Statements to the Courts Due to Ongoing Retaliations from Co-Workers of the Defendants" (doc. # 91); and

4)    "Plaintiff's Motion Requesting an Injunction and a Restraining Order against 'Unit Manager Collins, Case Manager Finley & Counselor Madison'" (doc. # 96).

A.    Standard of Review

In order to be entitled to a preliminary injunction or a temporary restraining order pursuant to Fed. R. Civ. P. 65, the moving party must establish: "(1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest." *Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir. 2001) (citation omitted). "As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991) (citation omitted).

"Because the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, we have identified the following three types of specifically disfavored preliminary injunctions . . . : (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Schrier v. Univ. of Colo.,* 427 F.3d 1253, 1258-59

(10th Cir. 2005) (internal quotation marks and citations omitted).  The relief sought by Mr. Teague would alter rather than preserve the status quo.  "Such disfavored injunctions must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."  *Schrier*, 427 F.3d at 1259 (internal quotation marks and citation omitted).

B.    Analysis

First, Mr. Teague alleges that he was placed "in a recreation cage that was contaminated with human body fluids (spit on the walls/in the corners and urine)" on September 17, 2007 and that he was denied "his scheduled outside (3) hours recreation period" on September 18, 2007.  (*See* doc. # 83).  Mr. Teague alleges improper conduct by Correctional Officers Peterson and Harter and requests "an Injunction/Restraining Order be granted against the defendants and their co-workers to stop the ongoing retaliations." (*See* doc. # 83).  Mr. Teague also relates several incidents that occurred between October 5, 2007 and November 6, 2007, including but not limited to verbal harassment and denial of showers, T.V., recreation, and cleaning supplies.  (*See* doc. # 88).  Mr. Teague requests "an Injunction/Restraining Order be granted against the defendants and their co-workers to stop the ongoing harassments & retaliations."  (*See* doc. # 88).  Mr. Teague further seeks injunctive relief against "Unit Manager Collins, Case Manager Finley & Counselor Madison."  (*See* docs. # 91 and # 96).  Mr. Teague asks the court to "remove plaintiff from the U.S. Penitentiary-Max" based on the denial "of requested Inmate Account Statements" and "ongoing retaliations."  (*See* docs. # 91 and # 96).  Mr. Teague alleges numerous instances that he was denied copies, notarization, carbon paper, and administrative remedies.  (*See* doc. # 97).

1.     Substantial Likelihood of Success on the Merits of the Case

The court has recommended herein that all of Mr. Teague's claims except Claim Five be dismissed for numerous reasons. Thus, Mr. Teague has not demonstrated a likelihood of success on the merits of his claims.

Mr. Teague has not alleged or demonstrated that any denial or delay of access to the court prejudiced him in pursuing nonfrivolous litigation. *See Trujillo v. Williams*, 465 F.3d at 1226 (to state a claim for denial of access to the courts, a plaintiff "must show that any denial or delay of access to the court prejudiced him in pursuing litigation") (citation omitted). The record does not support Mr. Teague's allegation for denial "of requested Inmate Account Statements" and "ongoing retaliations." (*See, e.g.,* docs. # 106, # 105, # 104, # 102, # 101, # 92, # 90 (inmate account statements and partial filing fee payment receipts)).

Mr. Teague has not established a relationship between the injunctive relief sought and the underlying civil rights claims. A preliminary injunction grants intermediate relief of the same character as that which may be finally granted. *See De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945). "Thus, a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). *See also Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975) (stating that one seeking a preliminary injunction must present "clear proof that he will probably prevail when the merits are tried, so to this extent there is a relation between temporary and permanent relief" (citations omitted)). By this lawsuit, Mr. Teague seeks "compensatory" and "exemplary" damages for alleged civil rights violations that occurred between 2003 and 2006. (*See* SAC (doc. # 26) at p. 30 of 30). Mr. Teague has availed himself of an adequate remedy at law in the form of damages for any violation he may have suffered. In his requests for injunctive relief, Mr. Teague addresses matters that occurred

in September through December of 2007, relating to lawsuits other than those that are the basis of the SAC and involving harassment, showers, T.V., recreation, cleaning supplies, missing property, inmate account statements, and carbon paper, among other things. A preliminary injunction would be inappropriate to address wrongs unrelated to the SAC.

The requested injunctions would also bind non-parties. Under Fed. R. Civ. P. 65(d), an injunction is only binding "upon the parties to the action . . . , [or] those persons in active concert or participation with them. . . ." Fed. R. Civ. P. 65(d). "Unit Manager Collins, Case Manager Finley & Counselor Madison" are not Defendants in this civil action. Rule 65(d) entails proof of collusion or treatment of these officials as the Defendants' "alter ego." *See Reliance Insurance Company v. Mast Construction Company*, 84 F.3d 372, 377 (10th Cir. 1996). Mr. Teague has made no such allegations and attributes the conduct to lawsuits other than the lawsuits that are the basis of the SAC. (*See, e.g.*, doc. # 97 ("Due to pending Civil Actions # 06-cv-01800-LTB-CBS, # 06-cv-02588-LTB-CBS & # 07-cv-00752-LTB-CBS against defendants! Plaintiff is repeatedly forced to endure ongoing retaliations form their co-workers here at the U.S. Penitentiary-Max!")). Mr. Teague seeks to bind non-parties without any specific allegations of active concert or participation by the named Defendants.

### 2. Irreparable Harm

Mr. Teague must also show that he will suffer irreparable injury if his request for injunctive relief is denied. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Schrier*, 427 F.3d at 1267 (citation omitted). "The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Schrier*, 427 F.3d at 1267 (internal quotation marks and citation omitted).

Mr. Teague's allegations fall short of showing that he will suffer immediate and

irreparable harm in the absence of the relief sought. First, if Mr. Teague were to prevail on his claims on the merits, he may be awarded his monetary damages. Mr. Teague fails to demonstrate that his alleged injuries are not capable of being fully remedied by money damages. *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (no irreparable harm when the injury can "be adequately atoned for in money"). Second, Mr. Teague seeks injunctive relief based on past incidents that occurred in September through December of 2007. "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *Schrier*, 427 F.3d at 1267. Mr. Teague contends that he should not be subjected to unspecified "ongoing retaliations." Mr. Teague's suggestion is too speculative for a finding of irreparable injury.

3.      Balance of Parties' Interests and Whether Adverse to the Public Interest

Next, Mr. Teague must demonstrate that "the threatened injury. . . outweighs whatever damage the proposed injunction may cause the opposing party" and that "the injunction, if issued, would not be adverse to the public interest." *Schrier,* 427 F.3d at 1258. Mr. Teague has not addressed either of these factors.

The third factor mitigates against granting an injunction. In *Turner v. Safley*, the Supreme Court cautioned against judicial interference with the daily administration of prisons:

> Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint.

482 U.S. 78, 84-85 (1987). Mr. Teague is requesting that the court monitor such matters as making copies, showering, verbal harassment, television, recreation, cleanliness of cells, assignment of cells, and the issuance of incident reports. Granting Mr. Teague's requests

would involve the court in matters of prison management which would be contrary to the public interest. *See, e.g., Peterson*, 149 F.3d at 1144 ("it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role").

As Mr. Teague has not established any of the requisite elements, he is not entitled to injunctive relief.

Accordingly, IT IS RECOMMENDED that:

1.       Defendants' Amended Motion to Dismiss (filed September 7, 2007) (doc. # 73) be GRANTED in part as follows:

A.       All claims alleged against Defendants in their official capacities be dismissed with prejudice for lack of subject matter jurisdiction, as barred by sovereign immunity.

B.       Claims One, Two, and Three be dismissed with prejudice as barred by the statute of limitations.

C.       Claim Ten be dismissed with prejudice in part as to Mr. Teague's allegations of unlawful conduct that occurred on July 23, 2004 and September 3, 2004, as barred by the statute of limitations.

D.       Claim Ten be dismissed in its remaining part for failure to state a claim upon which relief can be granted for conspiracy.

E.       Claims Four, Six, Seven, Eight, and Eleven be dismissed for failure to state a claim upon which relief can be granted for retaliation.

F.       Claim Nine be dismissed for failure to state a claim upon which relief can be granted for denial of access to the court.

G.       Defendants R. Wiley and D. Krist be dismissed from this civil action (specifically from Claims Five, Seven, Eight, Nine, and Eleven) for lack of personal participation.

H.       Defendant D. Carpenter be dismissed from Claim Six for lack of personal participation.

I.       Defendant R. Bauer be dismissed from Claim Ten for lack of personal participation.

J.     Defendants J. Arroyo and T. Sudlow be dismissed from Claims Five and Eight for lack of personal participation and for failure to state a claim upon which relief can be granted against them for retaliation.

K.     Defendants R. Bauer and N. Gladbach be dismissed from this civil action with prejudice as the FTCA is the exclusive remedy for Mr. Teague's claims against them.

2.     Defendants' Amended Motion to Dismiss (filed September 7, 2007) (doc. # 73) be DENIED in part in that this civil action proceed only on Claim Five against Defendants P. Lee and J. Guadian.

3.     Defendants' Motion to Dismiss (filed September 4, 2007) (doc. # 71) be denied as moot as superseded by Defendants' Amended Motion to Dismiss (filed September 7, 2007) (doc. # 73).

4.     "Plaintiff's Motion Informing the Courts of the Continued Retaliations/Harassments Plaintiff is Forced to Endure by U.S. Penitentiary - Max Officials in D-Unit and Requesting an Injunction/Restraining Order against the Defendants/Defendants Co Workers" (filed September 21, 2007) (doc. # 83) be DENIED.

5.     "Plaintiff's Motion Requesting an Injunction and Restraining Order" (filed November 29, 2007) (doc. # 88) be DENIED.

6.     "Plaintiff's Motion Requesting an Injunction and a Restraining Order against 'Unit Manager Collins, Case Manager Finley & Counselor Madison' and an Extension of Time to Provide Inmate Account Statements to the Courts Due to Ongoing Retaliations from Co-Workers of the Defendants" (filed December 17, 2007) (doc. # 91) be DENIED.

7.     "Plaintiff's Motion Requesting an Injunction and a Restraining Order against 'Unit Manager Collins, Case Manager Finley & Counselor Madison'" (filed January 3, 2008) (doc. # 96) be DENIED.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 28th day of April, 2008.

BY THE COURT:


    s/ Craig B. Shaffer
United States Magistrate Judge